**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

QUAUMEEKA SAUNDERS,

      Plaintiff,

      v.                                    Case No. 2:20-cv-02608-HLT-TJJ

BIG BLUE HEALTHCARE, INC., doing
business as RIVERBEND POST-ACUTE
REHABILITATION, et al.,

      Defendants.

## MEMORANDUM AND ORDER

Plaintiff Quaumeeka Saunders is the representative of the heirs of Theressa Loggins, who was a resident at a care facility where she contracted and died of COVID-19. Plaintiff filed this wrongful-death action against Defendants[1]—the owners and operators of the care facility—alleging that they were negligent in failing to protect against COVID-19 infections. Defendants removed this case from state court where it was initially filed, arguing that the Public Readiness and Emergency Preparedness Act, 42 U.S.C. § 247d-6d ("PREP Act"), provides for "complete preemption" and presents a federal question, which would give this Court jurisdiction. In turn, Plaintiff moves for remand, arguing that the allegations arise solely under state law and the PREP Act does not apply.

In keeping with a series of prior rulings regarding similar claims, the Court agrees with Plaintiff that the PREP Act's provisions regarding the administration or use of covered countermeasures are not applicable to the allegations in this case, which allege negligence

---

[1] The named defendants in this case are Big Blue Healthcare, Inc.; Golden Oaks Healthcare, Inc.; Ryan Leiker; Little Blue Health Holdings, LLC; The Ensign Group, Inc.; and Ensign Services, Inc. For purposes of this order, the Court refers to these Defendants collectively while acknowledging that their interests might not be aligned beyond this order.

stemming from a failure to follow certain policies, procedures, and guidelines regarding COVID-19. The Court also finds that Plaintiff's claims do not present an embedded federal question. Accordingly, this Court lacks subject-matter jurisdiction and remands this case to state court.

## I.      BACKGROUND

Plaintiff, who is the surviving granddaughter of Theressa Loggins, filed this lawsuit in the Wyandotte County District Court in Wyandotte County, Kansas. The petition alleges that Loggins was a resident at Riverbend Post-Acute Rehabilitation, where she was exposed to and contracted COVID-19, and which caused her death. Plaintiff sued Defendants for wrongful death.

The petition alleges that Loggins was admitted to Riverbend in 2017 because she was incapable of caring for herself. By March 13, 2020, Plaintiff alleges Riverbend knew of the risks associated with COVID-19 and the importance of preventing its spread throughout the facility. However, in late March, a Riverbend staff member began showing symptoms of COVID-19 and was allowed to work while the staff member had a cough or fever, and without using personal protective equipment. The staff member was tested on March 29, and the results came back positive for COVID-19 on March 30. Despite this, Riverbend residents were still allowed to congregate in common areas after March 29.

By April 1, Riverbend reported to government officials that it had positive COVID-19 cases. By April 3, seventeen residents and two staff members at Riverbend had tested positive. On April 18, Loggins was taken to the hospital with shortness of breath and fever. She tested positive for COVID-19 on April 19, and she died of COVID-19 on April 21.

Plaintiff claims that Defendants breached their duty of care and were negligent and careless by failing to:

- follow proper infection control protocols;
- ensure workers were not working with COVID-19 symptoms;
- provide personal protective equipment to staff;
- separate those with symptoms from those without;
- adhere to social-distancing guidelines;
- respond to the presence of COVID-19 in the facility;
- timely request additional staff and assistance from public health entities;
- supervise, monitor, assess, and document Loggins's condition;
- implement a care plan to address Loggins's risk of contracting COVID-19;
- protect Loggins from physical harm or injury;
- properly supervise and train staff;
- provide adequate staffing and nursing;
- follow standing orders, instructions, guidelines, and protocol regarding COVID-19; and
- provide adequate interventions.

Plaintiff alleges that this negligence by Defendants caused Loggins's death.

Defendants removed the case to federal court. Removal is based on federal-question jurisdiction. Defendants contend that, under the PREP Act, the claims in this case are completely preempted, which gives this Court subject-matter jurisdiction. Shortly after removal, Plaintiff filed a motion to remand this case back to state court.[2]

## II.   STANDARD

Under 28 U.S.C. § 1447(c), a district court must remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." Federal courts are courts of limited jurisdiction, so the presumption is one of no jurisdiction until an adequate showing of jurisdiction is made. *Dutcher v. Matheson*, 733 F.3d 980, 985 (10th Cir. 2013). When

---

[2]   Defendants have also moved to dismiss Plaintiff's case, Doc. 8, and filed a counterclaim seeking declaratory judgment regarding the applicability of the PREP Act, Doc. 7. Briefing on the motion to dismiss has been stayed pending ruling on the motion to remand. Doc. 23. Given this ruling remanding the case to state court for lack of subject-matter jurisdiction, the Court does not reach the motion to dismiss or address the propriety of any counterclaim.

a party removes a case to federal court, the burden is on that party to establish that federal jurisdiction exists. *Id.*; *Christensen v. BNSF Ry. Co.*, 242 F. Supp. 3d 1186, 1189 (D. Kan. 2017). "Doubtful cases must be resolved in favor of remand." *Thurkill v. The Menninger Clinic, Inc.*, 72 F. Supp. 2d 1232, 1234 (D. Kan. 1999).

## III.   ANALYSIS

### A.   The surreply and supplemental authorities have been considered.

Defendants filed a motion for leave to file a surreply. Doc. 32. Defendants contend that a surreply is necessary to respond to arguments raised for the first time in Plaintiff's reply. Plaintiff has not filed any response opposing Defendants' motion. Surreplies are not permitted without leave of court. *See Patterson v. Lansing*, 2001 WL 946181, at *2 (D. Kan. 2001). But given the issues at stake and the procedural posture of the case, and given that no opposition was filed, the Court will permit Defendants' proposed surreply (Doc. 32-1). It has been considered in deciding the motion to remand.

Defendants have also filed three letters identifying supplemental authorities in support of their opposition to the motion to remand in accordance with D. Kan. Rule 7.1(f). Docs. 33, 35, 37. In addition, Defendants have also filed a motion to file a supplemental brief regarding an advisory opinion issued the day they filed their response, and Plaintiff has filed two motions for leave to submit supplemental authority. Docs. 34, 36. No oppositions to these motions have been filed, and thus the Court grants them, to the extent motions were necessary. *See* D. Kan. Rule 7.1(f). The supplemental authorities have also been considered in deciding the motion to remand.

### B.   For purposes of federal-question jurisdiction, the general rule is that a plaintiff's complaint dictates whether state or federal law is invoked.

Plaintiff first argues that removal was not proper because the petition does not present a federal question. Defendants removed this case to federal court on grounds that Plaintiff's state-

court petition asserts a claim "arising under" federal law, within the meaning of 28 U.S.C. § 1331. Specifically, Defendants contend that Plaintiff alleges misconduct by a covered person in the administration of a covered countermeasure under the PREP Act. But Plaintiff's petition does not—on its face—assert a federal claim, under the PREP Act or otherwise. Plaintiff alleges negligence and wrongful death under Kansas law.

In the absence of diversity, federal courts have jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." *See* 28 U.S.C. § 1331. Whether a claim "arises under" federal law generally turns on the "well-pleaded" allegations of the complaint. *Dutcher*, 733 F.3d at 985; *Devon Energy Prod. Co. v. Mosaic Potash Carlsbad, Inc.*, 693 F.3d 1195, 1202 (10th Cir. 2012). Federal-question jurisdiction exists only if the plaintiff's claims are based on federal law. *Devon Energy Prod.*, 693 F.3d at 1202. By omitting federal-law claims from a complaint, a plaintiff can effectively avoid removal. *Id.* Potential affirmative defenses are not considered, including defenses based on preemption. *Id.*; *Christensen*, 242 F. Supp. 3d at 1190.

Here, Plaintiff has alleged a negligence and wrongful-death claim under state law. Under the well-pleaded complaint rule, then, there is no federal-question jurisdiction unless Defendants can establish subject-matter jurisdiction under an exception to the well-pleaded complaint rule.

### C.    Defendants argue the PREP Act invokes the doctrine of complete preemption or presents an embedded federal question.

Defendants' response to the motion to remand suggests that federal jurisdiction can be found in two ways. Both depend on the PREP Act applying to this case. First, Defendants argue that the doctrine of complete preemption applies, as it operates through the PREP Act. Second, Defendants argue that the PREP Act presents an embedded federal question under the standard in *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308

(2005).[3] Because these arguments all turn on the applicability of the PREP Act in this case, the Court must first explore that statute and determine whether it applies to Plaintiff's claims and, if so, then determine whether either exception to the well-pleaded complaint rules supports removal in this case.

> 1. **The PREP Act applies to the administration or use of covered countermeasures.**

The parties disagree on the scope of the PREP Act and whether it applies here. In determining whether a statute applies, the first step is to look at the statute's "plain and unambiguous meaning." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). If the language is unambiguous, the analysis stops. *Id.* "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341.

The PREP Act is invoked when the Secretary issues a declaration determining—for purposes of the PREP Act—that a disease or other health condition constitutes a public health emergency. 42 U.S.C. § 247d-6d(b). If the Secretary determines that such conditions exist, he or she "may make a declaration, through publication in the Federal Register, recommending . . . the manufacture, testing, development, distribution, administration, or use of one or more covered

---

[3] Defendants also suggest that a declaration issued by the Secretary of the Department of Health and Human Services ("HHS") "mandates" federal jurisdiction. As discussed below, under the PREP Act, the Secretary may issue a declaration stating that the PREP Act is in effect. *See* 42 U.S.C. § 247d-6d(b). This can include recommending "the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures, and stating that [the PREP Act's immunity provision] is in effect with respect to the activities so recommended." *Id.* Defendants suggest that the Secretary, in such a declaration, has made clear that Plaintiffs' claims "are federal claims and belong in the federal court system." Doc. 25 at 7. But it is unclear whether this argument is separate from Defendants' argument regarding complete preemption or *Grable*. The Court addresses the *Grable* argument below. To the extent Defendants are suggesting that the PREP Act authorizes the Secretary to alter or establish federal court jurisdiction, the Court finds no support for that claim and does not adopt it. The Court also notes that Defendants sometimes conflate the doctrine of complete preemption with the *Grable* doctrine, *see* Doc. 25 at 12, although these appear to be separate tests. Thus, the Court will address them separately.

countermeasures, and stating that [42 U.S.C. § 247d-6d(a)] is in effect with respect to the activities so recommended." *Id.*

The Secretary has issued such a declaration regarding the COVID-19 pandemic. *See* Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15,198 (Mar. 10, 2020) ("Declaration"). The Declaration has been amended six times. Primarily relevant here are the original Declaration and the Fourth Amendment to the Declaration, 85 Fed. Reg. 79,190 (December 3, 2020) ("Fourth Amendment").

Once the Secretary has issued a declaration, the PREP Act provides sweeping immunity for certain claims against certain covered individuals: "a covered person[4] shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure . . . ." 42 U.S.C. § 247d-6d(a)(1). This immunity is broad. It

> applies to any claim for loss that has a causal relationship with the <u>administration to or use by an individual of a covered countermeasure</u>, including a causal relationship with the design, development, clinical testing or investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

*Id.* at § 247d-6d(a)(2)(B) (emphasis added).

---

[4]   Who constitutes a covered person is further defined in the PREP Act, and certain additional requirements may apply based on the type of "covered person" at issue. *See, e.g.*, 42 U.S.C. § 247d-6d(a)(3)(C), (i)(2). Although the parties cite to subsequent guidance and debate whether Defendants are covered persons, the Court need not reach this issue. As discussed below, the Court finds that Plaintiff's claims do not assert a causal connection to the administration or use of covered countermeasures. Thus, even the Court accepted that Defendants are "covered persons," the PREP Act would still not apply.

A "covered countermeasure" under the PREP Act is, simplified, a drug, biological product, or device that is a "qualified pandemic or epidemic product"[5] or a "security countermeasure,"[6] or is authorized for emergency use under the Federal Food, Drug, and Cosmetic Act. *Id.* at § 247d-6d(i)(1). It also includes a "respiratory protective device that is approved by the National Institute for Occupational Safety and Health." *Id.* The Fourth Amendment more specifically defines covered countermeasures as:

> (a) Any antiviral, any drug, any biologic, any diagnostic, any other device, any respiratory protective device, or any vaccine manufactured, used, designed, developed, modified, licensed, or procured:
>
>> i. To diagnose, mitigate, prevent, treat, or cure COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom; or
>>
>> ii. to limit the harm that COVID-19, or the transmission of SARS-CoV-2 or a virus mutating therefrom, might otherwise cause;
>
> (b) a product manufactured, used, designed, developed, modified, licensed, or procured to diagnose, mitigate, prevent, treat, or cure a serious or life-threatening disease or condition caused by a product described in paragraph (a) above;
>
> (c) a product or technology intended to enhance the use or effect of a product described in paragraph (a) or (b) above; or
>
> (d) any device used in the administration of any such product, and all components and constituent materials of any such product.

Fourth Amendment, 85 Fed. Reg. at 79,196. But regardless, any countermeasure must still meet the definition of "covered countermeasure" in the PREP Act itself. *Id.*

---

[5]   A "qualified pandemic or epidemic product" is defined at 42 U.S.C. § 247d-6d(i)(7).

[6]   A "security countermeasure" is defined at 42 U.S.C. § 247d-6b(c)(1)(B).

"Administration" and "use" are not defined in the PREP Act. But the Secretary's Declaration states that "administration" of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." Declaration, 85 Fed. Reg. at 15,202. The Fourth Amendment has stated that, "[w]here there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'relating to . . . the administration to . . . an individual' under 42 U.S.C. [§] 247d-62." Fourth Amendment, 85 Fed. Reg. at 79,197.

There are two exceptions to the PREP Act's immunity provision. The PREP Act permits "an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct . . . ." 42 U.S.C. § 247d-6d(d)(1) (emphasis added). Such actions must "be filed and maintained only in the United States District Court for the District of Columbia." *Id.* at § 247d-6d(e)(1).[7] For injuries not involving willful misconduct, the PREP Act establishes a "Covered Countermeasure Process Fund," which provides "compensation to eligible individuals for covered injuries directly caused by the administration or use of a covered countermeasure pursuant to such declaration." 42 U.S.C. § 247d-6e(a) (emphasis added). That fund is funded by Congressional appropriation. *Id.* No federal or state court has jurisdiction to review award decisions by the fund. *Id.* at § 247d-6e(b)(5)(C).

The PREP Act preempts state laws that create different standards regarding covered countermeasures:

---

[7]   Additional requirements govern willful-misconduct claims. 42 U.S.C. § 247d-6d(c), (e).

> During the effective period of a declaration under subsection (b), or at any time with respect to conduct undertaken in accordance with such declaration, no State or political subdivision of a State may establish, enforce, or continue in effect with respect to a covered countermeasure any provision of law or legal requirement that—
>
> (A)  is different from, or is in conflict with, any requirement applicable under this section; and
>
> (B)  relates to the design, development, clinical testing or investigation, formulation, manufacture, distribution, sale, donation, purchase, marketing, promotion, packaging, labeling, licensing, use, any other aspect of safety or efficacy, or the prescribing, dispensing, or administration by qualified persons of the covered countermeasure, or to any matter included in a requirement applicable to the covered countermeasure under this section or any other provision of this chapter, or under the Federal Food, Drug, and Cosmetic Act.

42 U.S.C. § 247d-6d(b)(8).

In sum, the PREP Act creates immunity for all claims of loss causally connected to the administration or use of covered countermeasures, which are certain drugs, products, or devices. Exceptions to immunity exist for claims proximately caused by willful misconduct, but suit must be brought in the United States District Court for the District of Columbia. All other claims for injuries "directly caused by the administration or use of a covered countermeasure" must be pursued through the Covered Countermeasure Process Fund. State laws that differ or conflict regarding the administration or use of covered countermeasures are preempted.

> **2.     Plaintiff's claims do not fall under the PREP Act, and thus the doctrine of complete preemption, to the extent it exists under the PREP Act, does not permit removal.**
>
> > **a.     Complete preemption is a rare corollary to the well-pleaded complaint rule.**

Defendants argue that this Court has subject-matter jurisdiction sufficient to allow removal under the PREP Act and the doctrine of complete preemption. The doctrine of complete

preemption is an exception or corollary to the well-pleaded complaint rule. *See Devon Energy Prod.*, 693 F.3d at 1204. "Complete preemption is a rare doctrine" that has only been recognized in a handful of areas. *Id.* at 1204-05 (quoting *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n. 16 (11th Cir. 2011)). It is not to be lightly invoked. *Devon Energy Prod.*, 693 F.3d at 1205; *Connolly v. Union Pac. R.R. Co.*, 453 F. Supp. 2d 1104, 1109 (E.D. Mo. 2006) ("Courts have cautioned against an expansive application of the exception . . . ."). Complete preemption is not so much a statement of the breadth of a statute's preemptive power, "but rather as a description of the specific situation in which a federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal." *Devon Energy Prod.*, 693 F.3d at 1205 (quoting *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996)).

Importantly, "complete preemption" is not the same thing as "ordinary preemption." *See Dutcher*, 733 F.3d at 986. Complete preemption is a jurisdictional concept, while ordinary preemption is a defense to liability. *See Devon Energy Prod.*, 693 F.3d at 1203 n.4; *Christensen*, 242 F. Supp. 3d at 1190; *see also Schmeling*, 97 F.3d at 1342. Ordinary preemption, which can take the form of express, conflict, or field preemption, is generally an affirmative defense that state law has in some way been displaced by federal law. *Devon Energy Prod.*, 693 F.3d at 1203 n.4. But an ordinary-preemption <u>defense</u> does not make a complaint removable to federal court. *See Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1221 (10th Cir. 2011); *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272-73 (2d Cir. 2005) ("Many federal statutes—far more than support complete preemption—will support a defendant's argument that because federal law preempts state law, the defendant cannot be held liable under state law."). This is true—though often a point of confusion—no matter how <u>complete</u> the ordinary-preemption defense is.

By contrast, complete preemption—a <u>jurisdictional</u> doctrine—is said to make what is ostensibly "a state-law claim purely a creature of federal law, and thus removable from state to federal court from the outset." *Hansen*, 641 F.3d at 1221 (internal quotations and citations omitted). The distinction is important. "That is, a state cause of action may not be viable because it is preempted by a federal law—but only if federal law provides its own cause of action does the case raise a federal question that can be heard in federal court." *Dutcher*, 733 F.3d at 986; *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987). In other words, just because a federal statute provides a sound preemption defense to a state-law claim does not make it removable. *See Dupervil v. All. Health Operations, LCC*, 2021 WL 355137, at *9 (E.D.N.Y. 2021) ("Importantly, only complete preemption provides a basis for removal; returning to the well-pleaded complaint rule, an action may not be removed simply because the defendant can raise the defense of field preemption."). The statute must <u>also</u> provide an exclusive cause of action. In this way, complete preemption—the jurisdictional doctrine—does not operate as a defense; rather, it operates to redirect a plaintiff's case to federal court because the claim, although labeled as a state-law claim, is actually a federal cause of action created by Congress and intended to be exclusive.

In determining whether to apply the doctrine of complete preemption, the Court asks two questions. Does a federal provision preempt the state law relied on by the plaintiff? And has Congress created an exclusive federal cause of action meant to displace all state claims, such that the claim is removable? *Devon Energy Prod.*, 693 F.3d at 1205; *see also Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 9 n.5 (2003) (stating that "the proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive rather than on whether Congress intended that the cause of action be removable").

Importantly, and perhaps obviously, the claims at issue must fall within the scope of the relevant federal statute for complete preemption to apply. *See Beneficial Nat. Bank*, 539 U.S. at 8 ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."); *Sullivan*, 424 F.3d at 272 ("Under the complete-preemption doctrine, certain federal statutes are construed to have such 'extraordinary' preemptive force that state-law claims coming within the scope of the federal statute are transformed, for jurisdictional purposes, into federal claims—i.e., completely preempted."). Accordingly, to avoid remand, Defendants must show that Plaintiff's allegations fall within the scope of the PREP Act.

**b.    Plaintiff's claims do not fall under the PREP Act.**

Plaintiff argues that the PREP Act is not implicated in this case, and thus the doctrine of complete preemption cannot provide a path to jurisdiction and this case must be remanded. In a series of earlier cases arising out of COVID-19 deaths at the same facility, which involved essentially the same defendants and had state-court petitions substantively like the petition in this case, the Court granted a motion to remand. *See, e.g.*, *Jackson v. Big Blue Healthcare, Inc.*, 2020 WL 4815099, at *8 (D. Kan. 2020).[8] In those cases, the Court found that the plaintiffs' claims

---

[8]    There were 12 cases that were substantively identical, and the Court issued functionally identical opinions in each of the cases. *See Jackson*, 2020 WL 4815099; *Lutz v. Big Blue Healthcare, Inc.*, 2020 WL 4815100 (D. Kan. 2020); *Rodina v. Big Blue Healthcare, Inc.*, 2020 WL 4815102 (D. Kan. 2020); *Eaton v. Big Blue Healthcare, Inc.*, 2020 WL 4815085 (D. Kan. 2020); *Brown v. Big Blue Healthcare, Inc.*, 2020 WL 4815078 (D. Kan. 2020); *Fortune v. Big Blue Healthcare, Inc.*, 2020 WL 4815097 (D. Kan. 2020); *Block v. Big Blue Healthcare, Inc.*, 2020 WL 4815076 (D. Kan. 2020); *Baskin v. Big Blue Healthcare, Inc.*, 2020 WL 4815074 (D. Kan. 2020); *Harris v. Big Blue Healthcare, Inc.*, 2020 WL 4815098 (D. Kan. 2020); *Campbell v. Big Blue Healthcare, Inc.*, 2020 WL 4815082 (D. Kan. 2020); *Long v. Big Blue Healthcare, Inc.*, 2020 WL 4815079 (D. Kan. 2020); *Block v. Big Blue Healthcare*, 2020 U.S. Dist. LEXIS 150005 (D. Kan. 2020). The Court has reviewed and compared the petition in this case to those in these earlier 12 cases and finds them to be substantively similar. Although Defendants argue that a different outcome should occur here, that appears to be based on subsequent developments involving the PREP Act, agency guidance, and other authorities. Neither party raises substantive distinctions between the petitions in this case and those previously remanded to state court. Indeed, neither party substantively addresses these prior decisions much at all.

were premised on a failure to take preventative measures to stop the spread of COVID-19, and that none of the harm alleged was causally connected to the administration or use of any covered countermeasure—the focus of the PREP Act. *See, e.g.*, *id.* at *6. Because the decedent's death was not caused by the administration or use of covered countermeasures, the PREP Act did not apply to those plaintiffs' claims. This was based on the plain language of the PREP Act and the very few cases to have addressed it at the time. *See, e.g.*, *id.* at *6-8.

Since those orders were issued, the Court has identified at least 13 other cases that have reached similar conclusions. *See Lyons v. Cucumber Holdings, LLC*, 2021 WL 364640 (C.D. Cal. 2021); *Dupervil*, 2021 WL 355137; *Goldblatt v. HCP Prairie Village KS OPCO LLC*, 2021 WL 308158 (D. Kan. 2021); *Anson v. HCP Prairie Village KS OPCO LLC*, 2021 WL 308156 (D. Kan. 2021); *Grohmann v. HCP Prairie Village KS OPCO LLC*, 2021 WL 308550 (D. Kan. 2021);[9] *Estate of Smith v. Bristol at Tampa Rehab. & Nursing Ctr., LLC*, 2021 WL 100376 (M.D. Fla. 2021); *Parker v. St. Jude Operating Co., LLC*, 2020 WL 8362407 (D. Or. 2020); *Gunter v. CCRC Opco-Freedom Square, LLC*, 2020 WL 8461513 (M.D. Fla. 2020); *Sherod v. Comprehensive Healthcare Mgmt. Servs., LLC*, 2020 WL 6140474 (W.D. Pa. 2020);[10] *Saldana v. Glenhaven Healthcare LLC*, 2020 WL 6713995 (C.D. Cal. 2020); *Estate of Jones v. St. Jude Operating Co., LLC*, 2020 WL 8361924 (D. Or. 2020); *Martin v. Serrano Post Acute LLC*, 2020 WL 5422949 (C.D. Cal. 2020); *Haro v. Kaiser Found. Hosps.*, 2020 WL 5291014 (C.D. Cal. 2020).[11]

---

[9]   *Goldblatt*, *Anson*, and *Grohmann* involved the same facility and were substantively identical.

[10]   *Sherod* involved a worker at a rehabilitation facility that contracted and died from COVID-19. But the analysis was otherwise like cases involving residents. *See Sherod*, 2020 WL 6140474, at *7.

[11]   The claims in *Haro* were that employees were required to show up 15 minutes before their shift started for health screenings, but they were not compensated for that time. *Haro*, 2020 WL 5291014, at *1. The defendants removed the case, citing the PREP Act and complete preemption, among other things. But the court found that the PREP Act did not cover the claims because they were not causally connected to the use of covered countermeasures. *Id.* at *3.

*Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, 478 F. Supp. 3d 518 (D.N.J. 2020), which was issued shortly before this Court's rulings in the earlier *Big Blue Healthcare* cases and cited therein, reached a similar conclusion as well. The Court also notes *Hatcher v. HCP Prairie Village KS OPCO LLC*, No. 20-2374-SAC (D. Kan. Jan. 27, 2021). *Hatcher* is a diversity case, but the court denied a motion to dismiss based on a claimed PREP Act immunity, finding that the PREP Act did not apply to the plaintiff's claims.

The general consensus of this Court's prior holdings, as well as the holding in these other cases, was that the plaintiffs' allegations did not fall within the scope of the PREP Act because the PREP Act was designed to address claims arising from the administration or use of covered countermeasures, rather than claims alleging a failure to act in the face of the threat of COVID-19 altogether. *See, e.g.*, *Jackson*, 2020 WL 4815099, at *6. Given that the claims in this case are essentially the same as those in these prior cases, the Court finds them persuasive in concluding that Plaintiff's claims do not fall within the scope of the PREP Act.

### c.   Plaintiff's claims do not involve prioritization or purposeful allocation of covered countermeasures as contemplated by the Fourth Amendment.

Defendants argue in response to the motion to remand that the Fourth Amendment, which was not issued until December 2020, clarifies that an omission or failure to act can be covered by the PREP Act in certain circumstances. The Fourth Amendment reiterated that administration of covered countermeasures "means physical provision of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients, management and operation of countermeasure programs, or management and operation of locations for the purpose of distributing and dispensing countermeasures"—essentially the same definition set forth in the original declaration. *See* Fourth

Amendment, 85 Fed. Reg. at 79, 97; *see also Jackson*, 2020 WL 4815099, at *5 (quoting Declaration, 85 Fed. Reg. at 15,202). But the Fourth Amendment further asserted that, "[w]here there are limited Covered Countermeasures, not administering a Covered Countermeasure to one individual in order to administer it to another individual can constitute 'related to . . . the administration to . . . an individual' under [the PREP Act]." Fourth Amendment, 85 Fed. Reg. at 79,197. Specifically, where supplies are limited and a decision has to be made how to use it or who to administer it to, "[p]rioritization or purposeful allocation of a Covered Countermeasure, particularly if done in accordance with a public health authority's directive, can fall within the PREP Act and this Declaration's liability protections." *Id.*[12] Defendants rely on this language in support of their position that the PREP Act does apply to inaction or a failure to administer covered countermeasures, as alleged here.[13]

Even accepting this interpretation of the PREP Act,[14] the Court finds this does not change the outcome in this case. Here, there are no allegations or facts suggesting that Plaintiff (or her relative) suffered any loss caused by the "prioritization or purposeful allocation" of a countermeasure. There are no allegations in this case that the loss was caused by the non-use or

---

[12] The Fourth Amendment gives an example where there is only one available dose of a COVID-19 vaccine and a healthcare provider opts to administer it to a person in a more vulnerable population. "In that circumstance, the failure to administer the COVID-19 vaccine to the person in a less-vulnerable population 'relat[es] to . . . the administration to' the person in a vulnerable population" because "[t]he person in the vulnerable population was able to receive the vaccine only because it was not administered to the person in the less-vulnerable population." Fourth Amendment, 85 Fed. Reg. at 79,197.

[13] Defendants also briefly point to the use of the phrase "acts or omissions" in the section of the PREP Act discussing a claim based on willful misconduct. To the extent the language of the PREP Act supports claims based on omissions in that context, the Court notes that Plaintiff's petition is based on negligence, not willful misconduct.

[14] The Court has previously interpreted the PREP Act based on its plain language. *See Robinson*, 519 U.S. at 340. The Court did, however, refer to the Declaration because "administration" and "use" are not defined in the PREP Act itself. The parties dispute the degree of deference owed to the Fourth Amendment and subsequent Advisory Opinions issued by the Secretary regarding the scope of the PREP Act. The Court does not need to reach that question, however, because even accepting the interpretation that the PREP Act can encompass non-use or non-administration that results from prioritization or purposeful allocation of covered countermeasures, as discussed above, the allegations here do not fall within that interpretation either.

non-administration of covered countermeasures <u>linked</u> to the use or administration of that countermeasure to another person instead. *See Lyons*, 2021 WL 364640, at \*4 ("Although the HHS Secretary's December 3, 2020 Amendment makes clear that an 'inaction claim' is not necessarily beyond the scope of the PREP Act, such claims only fall under the scope of the PREP Act where: (1) there are limited covered countermeasures; and (2) there was a failure to administer a covered countermeasure to one individual because it was administered to another individual.").

Other courts that have considered this interpretation of the PREP Act have come to a similar conclusion. *See Grohmann*, 2021 WL 308550, at \*9-10 ("The court nonetheless concludes that the Declaration's emphasis on causation in the context of non-administration claims reinforces our court's causation analysis in related PREP Act cases."); *Hatcher*, No. 20-2374-SAC, slip op. at 15 (D. Kan. Jan. 27, 2021) ("Plaintiffs' allegations do not appear to claim that decedent's death was caused by a decision to ration a covered product or allocate a covered countermeasure to some but not others."); *Lyons*, 2021 WL 364640, at \*5 ("Indeed, even assuming that Plaintiff's allegations could be construed as alleging the administration of covered countermeasures, she does not allege that Decedent's death resulted from Defendants' decisions to administer those covered countermeasures to other individuals."); *Dupervil*, 2021 WL 355137, at \*12 ("[T]he crux of Plaintiff's claims is that his father died because Defendants failed to take certain steps. . . . These alleged failures cannot be said to be administering—or even prioritizing or purposefully allocating—a drug, biological product, or device to an individual within the meaning of the PREP Act such that Plaintiffs' claims are completely preempted."). Accordingly, the Fourth Amendment does not alter the Court's conclusion that the PREP Act does not apply to Plaintiff's claims.

       **d.**       **Defendants' other arguments do not demonstrate that the PREP Act applies.**

Defendants raise some other arguments in support of their contention that the PREP Act applies. Specifically, they argue that Plaintiff's allegations do not support a "failure to act" theory because at least some of the allegations reference affirmative action. For example, they point to allegations that Defendants say allege an "ineffective" use of covered countermeasures, which Defendants argue necessarily involves "affirmative action" that relates to the "use or administration of covered countermeasures, falling squarely within the PREP Act." Related to this is Defendants' argument that Plaintiff's petition also implicates the use of covered countermeasures, including PPE, diagnostic testing, and infection control programs. Similar arguments were made against nearly identical allegations and rejected in this Court's earlier rulings. *See, e.g.*, *Jackson*, 2020 WL 4815099, at *7-8 (noting that the petition "says almost nothing about any interventions—drugs, devices, etc.—that were used, and there are no allegations that the administration or use of any of those things <u>caused</u> the death of the decedent" (emphasis in original)); *see also Caterpillar*, 482 U.S. at 396-97 (noting that a defendant cannot ignore the allegations in the complaint and argue "that there are different facts [Plaintiff] might have alleged that would have constituted a federal claim" so that it can "justify removal on the basis of facts not alleged in the complaint").

Defendants also argue that "administration" under the PREP Act is not limited to physically providing a countermeasure but also covers "activities and decisions directly relating to public and private delivery, distribution and dispensing of the countermeasures to recipients" and the "management and operation of countermeasure programs, or management and operation of locations for purpose of distributing and dispensing countermeasures." Declaration, 85 Fed. Reg. at 15,202. Defendants contend this extends the PREP Act to "all manner of decisions" regarding

the use of countermeasures. This argument was likewise rejected in the earlier cases. *See, e.g.*, *Jackson*, 2020 WL 4815099, at *7 (rejecting an argument that the plaintiff's allegations were "inextricably intertwined" with the management and operation of the facility, and rejecting the notion that "using covered countermeasures <u>somewhere</u> in the facility is sufficient to invoke the PREP Act as to all claims that arise in that facility" (emphasis in original)). As the Court previously stated, the PREP Act still requires a causal connection between the injury and the use or administration of covered countermeasures, and that link is not present here.[15]

> **e.     Defendants' supplemental authorities do not counsel a different outcome.**

As noted above, Defendants have submitted some supplemental authorities in opposition to the motion to remand. *See* Docs. 33, 35, and 37. The Court has considered these authorities but does not find that they warrant a different outcome.

First, regarding the "Statement of Interest of the United States" filed in *Bolton v. Gallatin Center for Rehabilitation & Healing*, No. 3:20-cv-00683 (M.D. Tenn.), the Court finds that it largely focuses on whether the PREP Act is a complete-preemption statute. Specifically, it notes that cases with "claims relating to the administration or use of covered countermeasures" are removable. Doc. 33-1 at 1. But, in this case, the Court finds Plaintiff's claims do <u>not</u> relate to the administration or use of covered countermeasures. Accordingly, this Statement of Interest lacks relevance to this order.

The Court has also considered the recent decision denying remand in *Garcia v. Welltower OpCo Group LLC*, 2021 WL 492581 (C.D. Cal. 2021). This appears to be the only federal court

---

[15]  The Declaration supports this conclusion. In discussing the definition of "administration," it clarifies that "a liability claim alleging <u>an injury occurring at the site that was not directly related to the countermeasure activities is not covered</u>, such as a slip and fall with no direct connection to the countermeasure's administration or use. In each case, whether immunity is applicable will depend on the particular facts and circumstances." Declaration, 85 Fed. Reg. at 15,200 (emphasis added).

decision declining to remand this similar line of cases back to state court. The court there found that the plaintiff's allegations include the "use and misuse of PPE" and detailed "infection control measures and procedures including symptom checking, staff monitoring and screening, and limiting visitation." *Id.* at *8. Although the exact nature of the allegations and how they compare to this case is not entirely clear, it appears the arguments were like those rejected above in section III.C.2.d. The Court accordingly respectfully declines to adopt the finding in *Garcia*, which is not binding authority.[16]

Accordingly, the Court finds the PREP Act inapplicable to Plaintiff's claims because they do not allege an injury caused by the administration or use—or prioritization or purposeful allocation—of a covered countermeasure. Because the PREP Act does not apply, it cannot be used to establish federal question jurisdiction under the doctrine of complete preemption.[17]

---

[16] The removal in *Garcia* was also premised on diversity jurisdiction, *Garcia*, 2021 WL 492581, at *9 n.4, but the court declined to address whether diversity was satisfied as an alternate basis for jurisdiction. No diversity is alleged in this case. *Garcia* also relied on HHS's Advisory Opinion 21-01. That opinion primarily reiterated the statement in the Fourth Amendment that prioritization and purposeful allocation of covered countermeasures can relate to the administration or use of the same—something the Court has found is not alleged here. *See supra* section III.C.2.c.

[17] Because the Court finds the PREP Act inapplicable to Plaintiff's claims, it need not determine whether the doctrine of complete preemption would apply to that statute and permit removal. The Court does note that at least some of the other cases to address this issue have concluded—apparently contrary to the Secretary of HHS, *see* Advisory Opinion 21-01—that the PREP Act is not a complete-preemption statute. *See Dupervil*, 2021 WL 355137, at *8-11; *Parker*, 2020 WL 8362407, at *5-6. The Court likewise questions whether Defendants have established that the PREP Act would be an appropriate candidate to expand the rare doctrine of complete preemption, which operates to recast a plaintiff's claim as a federal one to allow it to proceed in federal court, not simply as a vehicle for removal and immediate dismissal, as Defendants advocate here. *See Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 252 (8th Cir. 2012) ("Courts should generally be highly reluctant to find complete preemption when there is no substitute federal cause of action."). Although the PREP Act also creates an exclusive federal cause of action in the limited case of a willful-misconduct claim, that limited cause of action does not necessarily mean that <u>any</u> claim that falls under the PREP Act would necessarily be removable. *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1190 (8th Cir. 2015) ("[I]t is unlikely that Congress would have intended the ICCTA to allow removal of claims of a kind entirely outside the scope of the statute's causes of action."). And although the PREP Act also provides for administrative remedies for those injured due to the administration or use of covered countermeasures, it's not clear that this makes room for the doctrine of complete preemption either. *See Sullivan*, 424 F.3d at 276 (noting that it is "internally inconsistent" to find jurisdiction to allow removal only to then require dismissal of the removed case because an administrative process has primary jurisdiction). So although the Court concludes it need not ultimately reach the question of whether the PREP Act is a complete-preemption statute (in a jurisdictional sense), it does note that there are certainly questions about whether it is a proper fit—questions that the parties here have either overlooked or declined to address.

3.      **Plaintiff's claim does not present an embedded federal question under**
       ***Grable.***

Defendants also argue that removal is proper under the embedded-federal-question test in

*Grable*. This is also sometimes called the "substantial question" test. *See Becker v. Ute Indian*

*Tribe of the Uintah & Ouray Rsrv.*, 770 F.3d 944, 947 (10th Cir. 2014). This test applies when a

claim is pleaded under state law but invokes a substantial federal question such that the ostensible

state-law claim can be considered to arise under federal law for jurisdictional purposes. *See id.*

Under this test, "federal jurisdiction over a state law claim will lie if a federal issue is: (1)

necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal

court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568

U.S. 251, 258 (2013). The Tenth Circuit has cautioned that "this branch of arising-under

jurisdiction is a slim one." *Gilmore v. Weatherford*, 694 F.3d 1160, 1171 (10th Cir. 2012).

The mere fact that a federal issue <u>may</u> be implicated is not enough. *Becker*, 770 F.3d at

947. The federal question must be an essential element of a plaintiff's claim. *Gilmore*, 694 F.3d at

1173. Nor can the doctrine apply based solely on a federal <u>defense</u>. *Becker*, 770 F.3d at 947; *see*

*also Grable*, 545 U.S. at 312 (stating "that in certain cases federal-question jurisdiction will lie

over <u>state-law claims that implicate</u> significant federal issues" (emphasis added)).

As discussed above, the Court has determined that Plaintiff's claims do not fall under the

PREP Act. Thus, Plaintiff's claims do not turn on an interpretation or application of the PREP Act.

*Compare Grable*, 545 U.S. at 314-15 (finding federal jurisdiction where the plaintiff's superior-

title action was premised on inadequate notice of the seizure by the IRS under federal law). Nor is

the PREP Act an <u>essential element</u> of Plaintiff's claim. *See Gilmore*, 694 F.3d at 1173; *see also*

*Dupervil*, 2021 WL 355137, at *14. Given this, there is no basis to conclude that Plaintiff's claim

contains an embedded federal question sufficient to justify removal to federal court as an exception

to the well-pleaded complaint rule. To be certain, Defendants intend to assert the PREP Act as a <u>defense</u> to Plaintiff's claim. But that is not enough. *Devon Energy Prod.*, 693 F.3d at 1210-12 (stating that *Grable* requires that the federal question be a necessary element of a plaintiff's claim, and the possibility that it will be raised as a defense is not sufficient); *see also Lyons*, 2021 WL 364640, at *6 (rejecting the existence of an embedded federal question because "the federal issue raised relates to Defendants' defense, not the claims alleged by Plaintiff"); *Dupervil*, 2021 WL 355137, at *14 (same).

The Court acknowledges the statement in the Fourth Amendment that "there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of [*Grable*] in having a unified, whole-of-nation response to the COVID-19 pandemic among federal, state, local, and private-sector entities," and "in having a uniform interpretation of the PREP Act." Fourth Amendment, 85 Fed. Reg. at 79,194. But the significance of the COVID-19 pandemic and the importance of uniform interpretation of the PREP Act does not create federal subject-matter jurisdiction.[18]

### D.   Defendants have not demonstrated that a hearing is necessary.

Defendants have alternatively requested that the Court permit "jurisdictional discovery" or conduct a "jurisdictional hearing." But it's unclear what evidence Defendants believe will be uncovered or presented. As explained above, the Court is very familiar with the issues in this case. Given the parties extensive briefing, the Court denies the request for a hearing because the Court

---

[18]   As cited above, the Court notes that federal courts have almost uniformly concluded that the PREP Act does not apply in this type of case or have otherwise found no federal subject-matter jurisdiction. *See Dupervil*, 2021 WL 355137, at *12 ("In fact, there is a growing consensus among courts across the country that state-law claims of negligence and wrongful death brought against a nursing home for failure to protect against the spread of COVID-19, like those that Plaintiff alleges, are not properly characterized as federal-law claims under the PREP Act."). The Court also notes that the PREP Act is available as a defense, to the extent it applies, in state court as well as federal court.

is not convinced that a hearing would substantially assist the Court in deciding the motion to remand.

## IV.    CONCLUSION

THE COURT THEREFORE ORDERS that Plaintiff's Motions for Remand (Doc. 19) is GRANTED. This case is REMANDED to the District Court of Wyandotte County, Kansas.[19] The Court directs the Clerk of Court to take all necessary steps to effectuate this remand.

THE COURT FURTHER ORDERS that Defendants' Motion for Leave to File a Surreply (Doc. 32) is GRANTED. The surreply (Doc. 32-1) is deemed filed and has been considered by the Court in this order.

THE COURT FURTHER ORDERS that Defendants' Motion for Leave to File Supplemental Brief in Opposition (Doc. 29) and Plaintiff's Motions for Leave to File Supplemental Authority (Docs. 34, 36) are GRANTED. The supplemental authorities and briefs have been considered by the Court in this order.

IT IS SO ORDERED.

Dated: February 26, 2021                    /s/ *Holly L. Teeter*_____
                                            HOLLY L. TEETER
                                            UNITED STATES DISTRICT JUDGE

---

[19]  Included in this remand is Defendants' counterclaim. *See* Doc 7.